UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SHELLY KNOPF                                                                  PLAINTIFF

v.                                                                           CIVIL ACTION NO. 3:06-CV-114-H

MELINDA L. WHEELER,                                          DEFENDANT
personally and in her official
capacity as Director, Administrative
Office of the Courts, Commonwealth
of Kentucky

**MEMORANDUM OPINION**

        This case was assigned to Chief Judge Heyburn. Due to his ongoing involvement in another trial, and at Judge Heyburn's request, the undersigned handled the plaintiff's motion for a preliminary injunction. The parties declined to reach an interim agreement, which would have permitted Judge Heyburn to hear arguments on this motion at a later date. Therefore, on Monday, March 6, 2006, the court conducted a telephonic hearing with the following counsel participating: on behalf of the plaintiff were James E. Millman and Charles G. Middleton, III of Middleton Reutlinger; and on behalf of the defendant were Elizabeth S. Hughes and James E. Keller of Gess, Mattingly & Atchison. The proceedings were conducted on the record and the court heard oral argument from counsel regarding plaintiff's request for a preliminary injunction. Being sufficiently advised, the court granted the preliminary injunction until further order of the court with leave to the defendant to raise the issue of abstention, which was neither briefed nor argued at the hearing.

**FACTS**

        The plaintiff ("Ms. Knopf") is a judicial secretary to her husband, Judge William Knopf, who

1

sits on the Kentucky Court of Appeals. Ms. Knopf is currently running for the office of clerk of the Jefferson County Circuit Court. On February 1st, 2006, the defendant, Melinda Wheeler acting as Director of the Administrative Office of the Courts ("AOC"), executed a personnel action form purporting to remove Ms. Knopf from the payroll. The AOC relied upon Section 2.09(2)(a) of the "Personnel Polices for the Kentucky Court of Justice"(hereinafter "Personnel Policies") as grounds for her removal. Under Section 2.09(2)(a) (the "resign-to-run" policy), certain Court of Justice employees must resign if they become candidates for political office. Ms. Knopf argues that she is not covered by this prohibition while the AOC takes the opposite position. In the alternative, Ms. Knopf challenges the constitutionality of the resign-to-run policy, which contains an express exception for the chief deputy clerk of a circuit court, who is not required to resign when running for a political office.

Ms. Knopf obtained a restraining order from the Franklin Circuit Court on February 6th, 2006, preventing the AOC from terminating her employment. However, the AOC then filed a motion to dissolve the restraining order. The Franklin Circuit Court heard arguments on that motion on February 28th, 2006. Subsequently, the Franklin Circuit Court dissolved the restraining order, ruling that it had no jurisdiction over the matter. The Personnel Policies at issue were promulgated by order of the Kentucky Supreme Court. *See Supreme Court of Kentucky, Order 2005-03.* The Franklin Circuit Court held, therefore, that the Kentucky Supreme Court had original jurisdiction over the matter and that the Franklin Circuit Court had no power to declare a Rule of the Supreme Court of Kentucky unconstitutional. The Franklin Circuit Court ordered that its original restraining order remain in force until the close of business on March 6, 2006.

## DISCUSSION

Ms. Knopf has since invoked this court's jurisdiction under 28 U.S.C. §1331, seeking a

preliminary injunction prohibiting the defendant from terminating her employment with the Court of Justice. Ms. Knopf articulates two constitutional arguments. She alleges a deprivation of the due process and equal protection rights afforded her under the Constitution of the United States. During the hearing, the defendant conceded that this court has jurisdiction, but explicitly reserved the right to raise an argument concerning abstention.

### A. Due Process

The Franklin Circuit Court ruled that the only process available to Ms. Knopf, within the state court system, is to challenge the Personnel Policies and the actions of the AOC in an original proceeding before the Kentucky Supreme Court. Ms. Knopf maintains that filing an original action with the Kentucky Supreme Court would be futile because the policy she challenges was promulgated by the Kentucky Supreme Court. She argues that the Kentucky Supreme Court is a party in interest because the AOC is an inseparable adjunct of the Kentucky Supreme Court. *See Martin v. Administrative Office of the Courts*, 107 S.W.2d 212, 214 (Ky. 2003). Ms. Knopf submits that this available avenue of recourse "does not comport with the most basic requirement of due process under the Fourteenth Amendment, namely a fair proceeding before an impartial decision maker." *Motion for Preliminary Injunction* (DN 3), p. 13-14. There was no evidence produced suggesting that the Kentucky Supreme Court would not provide a fair proceeding for Ms. Knopf or that the Kentucky Supreme Court is not an impartial decision maker.

Ms. Knopf referenced statements made by the Chief Justice's Chief of Staff, Jason Nemes, arguing that these statements represent the "AOC's apparent interpretation" on the issues presented in this case. *Motion for Preliminary Injunction* (DN 3), p. 9. There is absolutely no indication that Mr. Nemes purported to speak for the Kentucky Supreme Court. On the contrary, the defendant contended, at the hearing, that Mr. Nemes works exclusively for Chief Justice Lambert in his role as

executive head of the Court of Justice. *See* Ky. Const. § 110(5)(b) ("The Chief Justice of the Commonwealth shall be the executive head of the Court of Justice . . ."). Mr. Nemes' statements discussing the implementation of the resign-to-run policy do not compel the conclusion that the Kentucky Supreme Court is unable to review such policy in an original action.

Furthermore, the fact that these Personnel Policies were issued by the Kentucky Supreme Court does not mean that the Kentucky Supreme Court is incapable of reconsidering them. As the defendant argues, the Kentucky Supreme Court, in the course of performing its judicial duties, is routinely called upon to reexamine earlier rulings. This court is confident that the justices of the Kentucky Supreme Court are fully able to examine arguments raised by litigants and determine the validity of challenged policies even if those policies were implemented pursuant to an order of the Kentucky Supreme Court itself. We also note that the constitutional guarantee of procedural due process is not a guarantee of a successful outcome; rather it is a guarantee of fair process. We conclude that Ms. Knopf's opportunity to be heard by the Kentucky Supreme Court, without question, affords all the process she is due under the Constitution. Her contention that an available original action before the Kentucky Supreme Court deprives her of due process is therefore rejected.

### *B. Equal Protection*

Ms. Knopf asserts a second constitutional argument, claiming that the chief deputy clerk's exemption from the resign-to-run policy violates her right to equal protection of the law under the Fourteenth Amendment. The AOC maintains that the resign-to-run policy applies to Ms. Knopf as a judicial secretary to a Kentucky Court of Appeals Judge. Ms. Knopf does not concede that she is covered under the policy. Nonetheless, she argues, in the alternative, that if the resign-to-run policy does apply to her, it violates her right to equal protection under the law under the Fourteenth Amendment because she would be forced to resign while a chief deputy clerk of a circuit court, who

4

is in fact her opponent in the Jefferson Circuit clerk race, is permitted to retain employment with the Court of Justice.

The parties urge the court to consider whether there is a rational basis for the chief deputy clerk's exemption. *See e.g., Riley v. Kurtz*, 361 F.3d 906, 916 (6th Cir. 2004) (explaining that to survive a constitutional challenge under the equal protection clause, the challenged provision must, at the very least, be "rationally related to any conceivable legitimate [government] purpose"). The defendant articulates only one basis in support of the exemption contained in the resign-to-run policy; that is, chief deputy clerks of the circuit courts are uniformly well-trained for the position of circuit court clerk and are integral to the functioning of the clerk's office. *See Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction* (DN 8), p. 15-16. Secretaries to judges are similarly integral to the functioning of the judge's chambers. Depriving a judge of his secretary may be just as harmful to the Court of Justice as depriving the clerk of his chief deputy clerk. We find that the defendant has not articulated a rational basis, which is related to a legitimate government purpose, for this distinction between a chief deputy clerk of a circuit court and other Court of Justice employees.

The defendant argued that the distinction is based on the rationale that chief deputy clerks of the circuit courts do not work for individual judges and thus are not similarly situated to judges' chambers staff. According to the defendant, applying the resign-to-run policy to Ms. Knopf, a judicial secretary, avoids the appearance that the judge for whom such staff member works might endorse that employee in a political race. The defendant claims this would undermine the public confidence in the judiciary, a nonpartisan branch of government. However, this court finds such a distinction facile because the broad resign-to-run policy applies to other Court of Justice employees who also do not work directly for judges.

In order to grant a preliminary injunction, the court considers the following factors: (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *See In Re: DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir. 1985). Based on the finding above, the court determines that there is a likelihood of success on the merits sufficient to grant a preliminary injunction in order to prevent a constitutional violation of Ms. Knopf's right to equal protection under the law.

Ms. Knopf has demonstrated the necessary irreparable injury by indicating that retirement credit which she has "bought" through "irrevocable" payroll deductions may be lost if she terminates her employment prior to completion of the installment payments. *See Motion for Preliminary Injunction* (DN 3), p. 25. Additionally, as a candidate for office, Ms. Knopf will suffer a unique harm if she is terminated for violating the Personnel Policies of the Court of Justice. Such a termination would negatively affect her candidacy in the eyes of the voters. Any subsequent vindication would be too inarticulable to overcome the prejudice suffered by Ms. Knopf.

Ms. Knopf also argues that an alleged deprivation of her constitutional rights is sufficient to establish irreparable harm. *See Wright, Miller 7 Krane, Federal Practice and Procedure*, Vol. 11A, § 2948.1 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). While the United States Supreme Court has not deemed the right to candidacy a "fundamental right,"[1] several courts have indicated the importance of such a right. *See e.g., Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 260 n.8

---

[1] *See Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2837, 73 L.Ed.2d 508 (1982); *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 849, 31 L.Ed.2d 92 (1972).

(6th Cir. 1991), *cert. denied*, 525 U.S. 923 (1998) ("Given the integral relationship between candidacy and voters' rights under the First Amendment, candidacy may involve some level of a protected property or liberty interest."); *Morial v. Judiciary Comm'n of the State of Louisiana*, 565 F.2d 295, 301 (5th Cir. 1977) ("Candidacy for office is one of the ultimate forms of political expression in our society."). Ms. Knopf's Fourteenth Amendment claim also implicates her right to candidacy since she specifically articulates suffering harm by having the voter pool tainted with news of her termination. *See Motion for Preliminary Injunction* (DN 3), p. 25-26. The alleged deprivation of her constitutional rights, therefore, aggravates her injury. Additionally, the interest of no other party would be disserved by enjoining the AOC from terminating Ms. Knopf until the abstention matter may be briefed and argued by the parties. Lastly, we find that granting the preliminary injunction would not be otherwise contrary to the public interest.

    The defendant raised, but did not brief, an argument that the facts at bar may be uniquely appropriate for abstention. The court expressly notes that this injunctive relief should not prejudice the defendant from raising that issue before Judge Heyburn. Also, the defendant is permitted to subsequently clarify the situation regarding Ms. Knopf's retirement credit as it relates to the characterization of her irreparable injury.

    A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record